**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

NANAL, INC.,

Plaintiff,

v.

SMK INTERNATIONAL INC., *et al.*,

Defendants.

Case No. 2:19-cv-2211-RFB-DJA

**ORDER GRANTING ATTORNEY'S FEES AND AMENDED THE ECF NO. 170 BENCH ORDER**

Before the Court is Nanal Inc.'s ("Nanal") motion for attorney's fees ("Nanal Fees Mot.," ECF No. 172) and motion to amend the verdict ("Nanal Verdict Mot., ECF No. 174). Defendants responded to both motions. ("Def. Fees Opp." ECF No. 179; "Def. Verdict Opp." ECF No. 185). Nanal replied. ("Nanal Fees Reply" ECF No. 184; "Nanal Verdict Reply" ECF No. 186).[1] For the reasons below, the Court grants both of Nanal's motions.

## I. BACKGROUND

The Court assumes the parties' familiarity with the facts, excludes a detailed description of the background and procedural history, and refers to the facts in the discussion as necessary.

## II. DISCUSSION

Nanal has sought various forms and type of relief in its motions. The Court grants Nanal relief in this order. In Section A, the Court finds that Nanal did not waive its attorney's fees claim. In Section B, the Court finds that Nanal is entitled to attorney's fees on its breach of the Asset

[1] All other referenced documents are cited here: ("Complaint," ECF No. 1); ("Amended Complaint," ECF No. 10); ("Bench Order," ECF No. 170); ("Nanal Exhibits," ECF Nos. 172-1, 172-2, 172-3, 172-4, 172-5) ("Verdict Sheet," ECF No. 151); ("Def. Exhibits," ECF No. 185-1);

Purchase Agreement ("APA") claim against SMK. In Section C, the Court finds that Nanal is entitled to attorney's fees on its breach of the Personal Guaranty claim against Mohammad Maqbool ("Maqbool"). In Section D, the Court finds that Nanal is entitled to attorneys' fees under the Lanham Act. In Section E, the Court finds that Nanal's fees should be apportioned by 10%. In Section F, the Court amends the judgment to include Maqbool as liable for trademark infringement. In Section G, the Court finds that Nanal is entitled to prejudgment interest as to its breach of APA claim against SMK. In Section H, the Court finds that Nanal is entitled to prejudgment interest as to its breach of Personal Guaranty claim against Maqbool. Finally, in Section I, the Court finds that Nanal's fees are reasonable.

**A. Nanal did not waive its attorney's fees claim.**

Defendants' waiver argument is unpersuasive. Defendants argued that Nanal waived its right to argue for attorney's fees because it did not raise any related issues of fact or law as to its attorney's fees claim in the Proposed Joint Pretrial Order. Def. Fees Response, ECF No. 179, at 14-15.[2] Defendants also add that Nanal's conduct at trial was also inconsistent with its intent to later seek attorney's fees for breach of the APA. Id. at 15-16. The Court rejects both arguments. Attorney's fees "require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has prevailed. White v. New Hampshire Dep't of Emp. Sec., 455 U.S. 445, 451–52 (1982). Indeed, neither party could move for attorneys' fees under the APA until *after* the judgment because that contract is governed by California law, which requires a prevailing party before attorneys' fees can be awarded. Hsu v. Abbara, 9 Cal. 4th 863, 876 (Cal. 1995). The same can be said for the Personal Guaranty. See Cheffins v. Stewart, 825 F.3d 588, 597 (9th Cir. 2016) (requiring a prevailing party to recover attorney's fees under Nevada law). Nothing Nanal did could be construed as expressing an intent to relinquish its right to obtain attorney's fees. Defendants' wavier argument as to the APA and Personal Guaranty is meritless.

**B. Nanal is entitled to attorneys fees on its breach of the APA claim.**

"A claim for attorney's fees and related nontaxable expenses must be made by motion

[2] All page citations refer to the CM/ECF pagination

unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2). Federal law dictates only the process. Carnes v. Zamani, 488 F.3d 1057, 1059 (9th Cir. 2007). Indeed, "[r]ule 54(d)(2) creates a procedure but not a right to recover attorneys' fees." MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co., 197 F.3d 1276, 1280 (9th Cir. 1999). The "the right to fees and the method of calculating the fees are substantive issues governed by state law. Ignite Spirits, Inc. v. Consulting by AR, LLC, No. 2:21-CV-1590 (JCM/EJY), 2024 WL 1300060, at *1 (D. Nev. Mar. 27, 2024) (citation modified) (quoting Close v. Sotheby's, Inc., 909 F.3d 1204, 1208 (9th Cir. 2018)).

Nanal is entitled to attorney's fees under Cal. Civ. Code §1717. Under California law, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party[.]" CAL. CIV. CODE § 1717(a). To determine whether that provision is satisfied, California courts examine three elements: "First, the action generating the fees must have been an action on a contract. Second, the contract must provide that attorney's fees incurred to enforce it shall be awarded either to one of the parties or to the prevailing party. And third, the party seeking fees must have prevailed in the underlying action." Bos v. Bd. of Trs., 818 F.3d 486, 489 (9th Cir. 2016).

Nanal easily satisfies the first element: This action is based on the APA, which is a contract.

The second element requires there to be a contract language enforcing attorneys fees. California courts, when examining contract provisions, look at the contract's language. See, e.g., Zalkind v. Ceradyne, Inc.,124 Cal. Rptr. 3d 105, 112 (Cal. App. 4th 2011) (looking "to the language of the Asset Purchase Agreement itself."). "The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. The words of a contract are to be understood in their ordinary and popular sense." Id. (citation modified).

There is contract language indicating attorney's fees may be awarded. While there is not section entitled 'attorney's fees,' the contract's indemnification provisions make clear that the parties can bring claims against each other and require the other party to pay attorney's fees. See

Nanal Exhibits, ECF No. 172-1, at 11. "Indemnification agreements ordinarily relate to third-party claims." Myers Bldg. Indus., Ltd. v. Interface Tech., Inc., 13 Cal. App. 4th 949, 969 (1993). "But this general rule does not apply if the parties to a contract use the term 'indemnity' to include direct liability as well as third party liability." Dream Theater, Inc. v. Dream Theater, 124 Cal. App. 4th 547, 555 (2004). Relevantly, section 7.02 reads, "[Nanal] shall defend, indemnify and hold harmless [SMK], . . . against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to . . . any breach" of the "agreement." Nanal Exhibits, ECF No. 172-1, at 11. Mirroring that phrasing, section 7.03 reads, "[SMK] shall defend, indemnify and hold harmless [Nanal], . . . against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to . . . any breach" of the "agreement." Id. The indemnification provisions impose direct liability against the opposing party's breaches. See Nanal Exhibits, ECF No. 172-1, at 11; see also Dream Theater, Inc., 124 Cal. App. 4th at 555 (finding indemnification clauses to include direct claims where the parties indemnified each other against breaches caused by the other party). Thus, contrary to Defendants' arguments that the indemnification clause only addresses third party claims, the APA's indemnity clause allows the parties to bring claims against each other, and those claims allow each party to obtain an attorneys fees provision. In other words, Nanal satisfies element two.

The third element requires determining who the prevailing party was. "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." G.P.P., Inc. v. Guardian Prot. Prods., Inc., 126 F.4th 1367, 1374 (9th Cir. 2025) (citation modified) (quoting Scott Co. v. Blount, Inc., 20 Cal 4th 1103, 1109 (1999)). "The prevailing party determination is to be made only upon final resolution of the contract claims and only by a comparison of the extent to which each party has succeeded and failed to succeed in its contentions." Hsu, 9 Cal. 4th at 876 (citation modified). In determining who is the prevailing party, the court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed

by the pleadings, trial briefs, opening statements, and similar sources." G.P.P., Inc., 126 F.4th at 1374 (9th Cir. 2025) (citation modified) (quoting Hsu, 9 Cal. 4th at 876).

The third element is satisfied: Nanal is the prevailing party. On the contract claims, the jury found SMK liable and awarded Nanal $700,000. Verdict Sheet, ECF No. 151 at 2. In contrast, the jury awarded SMK $137,000. Verdict Sheet, ECF No. 151 at 3-4. On this record, the Court finds that Nanal is the prevailing party. SMK does not argue that Nanal did not prevail. See Def. Fees Opp., ECF No. 179, at 13-22. Consequently, the Court finds the third element satisfied.

With each element satisfied, the Court finds that the prevailing party, Nanal, is entitled to attorney's fees under Cal. Civ. Code §1717, for its breach of contract claim regarding the APA.

**C. Nanal is entitled to attorney's fees on its breach of the Personal Guaranty claim.**

The parties have unambiguously created an attorney's fees provision in the Personal Guaranty. To begin, Nevada law governs that contract. Nanal Exhibits, ECF No. 172-2, at 8. Under Nevada law, "Parties are free to provide for attorney fees by express contractual provisions." Davis v. Beling, 128 Nev. 301, 321, (2012) "The objective in interpreting an attorney fees provision, as with all contracts, is to discern the intent of the contracting parties. Id. (citation modified). "Traditional rules of contract interpretation are employed to accomplish that result. Therefore, the initial focus is on whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." Id. (citation modified). Relevantly, the Personal Guaranty reads: "[Maqbool] absolutely, unconditionally and irrevocably guarantees" the "future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by [Nanal] under or relating to the Underlying Agreement, plus all costs, expenses and fees (including the reasonable fees and expenses of Beneficiary's counsel) in any way relating to the enforcement or protection of Beneficiary's rights hereunder[.]" Nanal Exhibits, ECF No. 172-2, at 1. The plain language of the Personal Guaranty makes Maqbool "absolutely" responsible for "the reasonable fees and expenses of [Nanal's] counsel" for the enforcement of Nanal's rights under the Personal Guaranty. Nanal Exhibits, ECF No. 172-2, at 1. The language is clear and will be enforced by this Court. See, e.g., Davis, 128 Nev. at 322 ("because the Doughertys successfully defended against Davis's and Platinum's breach of contract actions, pursuant to the clear language

of these agreements, the Doughertys are entitled to recover reasonable attorney fees incurred in defense of those particular claims.”).[3]

**D. The Court will amend the Judgment to include Maqbool as liable for trademark infringement.**

The Court originally intended to include Maqbool in its trademark order. “The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.” Fed. R. Civ. P. 60(a). The focus of Rule 60(a) inquiries is “what the court *originally intended* to do.” Tattersalls, Ltd. v. DeHaven, 745 F.3d 1294, 1297 (9th Cir. 2014) (emphasis in original). Here, the Court found that Maqbool and SMK willfully infringed on Nanal’s mark. ECF No. 162, at 7. In fact, throughout the proceeding the Court explicitly referenced both SMK and Maqbool together in its willful infringement finding. Id. at 12. The record abounds with evidence supporting Nanal’s position that the Court originally intended to include Maqbool in its bench order on the trademark infringement claim. See ECF No. 162, at 7-12. Thus, the Court’s failure to include Maqbool’s name is no more than a clerical error. See Tattersalls, Ltd., 745 F.3d at 1297 (“The quintessential ‘clerical’ errors are where the court errs in transcribing the judgment or makes a computational mistake.”). The Court therefore amends the bench order to include liability against SMK and Maqbool.

Nanal did not waive this argument. During trial, Nanal pressed its claims against both SMK and Maqbool. Defendants understood this. In fact, Defendants sought dismissal of the claims against Maqbool. ECF No. 160 at 257. That request would make no sense had Nanal waived the claims against Maqbool. Nanal did not express an intent to relinquish its claims against Maqbool. The Court rejects Defendants’ wavier argument.

**E. Nanal is entitled to prejudgment interest as to its APA claim.**

The APA contract is governed by California law. “Prejudgment interest is a substantive matter governed by California law.” Kiewit Power Constructors Co. v. City of Los Angeles by & through Dep’t of Water & Power, 813 F. App’x 261, 266 (9th Cir. 2020) (citing See Sea Hawk

---

[3] Because the Court finds that the APA and Personal Guaranty independently support Nanal’s attorney’s fees, it does not reach the Lanham Act argument and Defendants apportionment argument.

Foods, Inc. v. Exxon Corp. & Exxon Shipping Co. (In re Exxon Valdez), 484 F.3d 1098, 1101 (9th Cir. 2007)).“Section 3827(a) mandates prejudgment interest on liquidated claims—claims where damages that are ‘certain, or capable of being made certain by calculation.”’ Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc., 664 F. Supp. 3d 1142, 1155 (S.D. Cal. 2023) (quoting N. Oakland Med. Clinic v. Rogers, 65 Cal. App. 4th 824, 828, 76 Cal.Rptr.2d 743 (1998)).

“The test for determining certainty under section 3287(a) is whether the defendant knew the amount of damages owed to the claimant or could have computed that amount from reasonably available information.” Id. (quoting Howard v. Am. Nat'l Fire Ins. Co., 187 Cal. App. 4th 498, 535, 115 Cal.Rptr.3d 42 (2010)).“Damages are not certain or liquidated when the amounts due turn on disputed facts, or when the amount depends upon the jury’s resolution of conflicting evidence[.]” Id. (citation modified). “Damages are deemed certain or capable of being made certain” under section 3287(a) when “there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable[.]” Cataphora Inc. v. Parker, 848 F. Supp. 2d 1064, 1072 (N.D. Cal. 2012) (quoting Esgro Central, Inc. v. General Ins. Co., 20 Cal.App.3d 1054, 1060, 98 Cal.Rptr. 153 (1971)).

The amount of damages was capable of being made certain. Nanal, in its original Complaint, alleged that “Defendants have refused to pay Nanal at least $1,378,000[.]” Complaint, ECF No. 1, at 3. Nanal calculated this amount by adding the purchase price payments of $160,000, the inventory sales of $218,000, and the additional inventory of at least $1,000,000. Id. at 3-4. Nanal’s Amended Complaint included the exact same language. Amended Complaint, ECF No. 10, at 3-4. In the Proposed Joint Pretrial Order, Nanal again proposed the same amount, $1,378,000. ECF No. 94, at 5. Defendants argument that Nanal refused to provide a specific amount or the basis for calculating the amount is not accurate. Nanal, in its response to Defendants interrogatory asking for the number of damages and how damages were calculated, answered with language mirroring its complaint: “Defendants have refused to pay Nanal at least $1,378,000 due and owing to Nanal under the APA, including but not limited to purchase price payments of $160,000, inventory sales of more than $218,000, and additional inventory of over $1,000,000.” ECF No. 185-1 at 12; Amended Complaint, ECF No. 10, at 3-4. The Court therefore finds that the

amount of damages was capable of being ascertained and awards Nanal $436,030 of prejudgment interest. Thus, SMK owes Nanal $1,136,030 on Nanal's breach of APA claim.

**F. Nanal is entitled to prejudgment interest as to its Personal Guaranty claim.**

The Personal Guaranty is governed by Nevada law. "In Nevada, three items must be determined to enable the trial court to make an appropriate award of interest: (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied." In re USA Com. Mortg. Co., 802 F. Supp. 2d 1147, 1175 (D. Nev. 2011) (citation modified). Here, all three elements are met.

First, the prejudgment interest rate is the "prime rate at the largest bank in Nevada on January 1 or July 1 . . . immediately preceding the date of the transaction, plus two percent." Nev. Rev. Stat. §99.040(1). The relevant prime rate here is 7.50% See Nanal Verdict Reply, ECF No. 186 at 5.

Second, interest commences on October 10, 2019. "Interest runs from the time money becomes due." Schoepe v. Pac. Silver Corp., 111 Nev. 563, 565–66 (Nev. 1995) (citation modified). That includes "from the time when performance was due as resolved by the court upon the trial of the cause." Id. Here, the Court found that "as of October 10, 2019" Defendants "had no further right to use the" trademarks. Bench Order, ECF No. 170 at 8. So the interest begins on that day.

Third, the jury awarded Nanal $500,000 against Maqbool, so the amount of money to which the rate of interest must be applied is clear.

Applying NRS 99.040 to the relevant facts, the Court amends the judgment to include $233,625 in prejudgment interest. Thus, Maqbool now owes Nanal $733,625 on the breach of the Personal Guaranty claim.

**G. Nanal's Attorneys' fees are reasonable**

"To determine reasonable attorney's fees, courts in the Ninth Circuit use the lodestar method. Under this method, the court multiplies the reasonable hourly rate by the number of hours reasonably expended in the litigation. Mayweather v. Wine Bistro, No. 2:13-CV-210-JAD-VCF, 2014 WL 6882300, at *9 (D. Nev. Dec. 4, 2014) (citing Morales v. City of San Rafael, 96 F.3d

359, 363–65 (9th Cir.1995)). "In calculating the lodestar figure, the court considers the following the factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of employment to the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed on the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, if any; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Id.

The Court finds the fees reasonable. Nanal, with its motion, submitted exhibits itemizing the breakdown of fees incurred in this action. See Nanal Exhibits, ECF Nos. 172-4, 172-5. The itemization of fees demonstrates that Nanal's law firms spent their time efficiently over nearly a half decade of litigation. See Nanal Exhibits, ECF Nos. 172-4, 172-5. Turning to the factors, Defendants do not contest Nanal's arguments as to Marquis Aurbach. See Def. Fees Opp., ECF No. 179, at 20-21. Thus, the Court finds the fees as to Marquis Aurbach presumptively reasonable. Defendants, however, argue Steven Davis, Esq., $527.80 an hour rate, Brandy Alonzo-Maryland, Esq., $350.00 an hour rate, and Gabriella M. Bow's, a paralegal, $350.00 an hour rate, were unreasonable. See Def. Fees Opp., ECF No. 179, at 20. But courts in this district have found that "rates between $295 and $675 to be reasonable for trademark litigation in Las Vegas, Nevada." Sec. Alarm Fin. Enters., L.P. v. Nebel, No. 2:16-CV-592 (JCM/VCF), 2018 WL 485938, at *4 (D. Nev. Jan. 19, 2018); see also Mayweather, 2014 WL 6882300, at *10 (collecting cases). The Court therefore finds the attorney's fees reasonable.

## III. CONCLUSION

**IT IS HEREBY OREDERD** that Nanal's motion for attorney's fees (ECF No. 172) is **GRANTED**. In particular, the Court finds that Nanal is entitled to attorneys' fees on its APA, Personal Guaranty, and trademark claims.

**IT IS FURTHER ORDERED** that Nanal's motion to amend the Court's ECF No. 170 Bench Order (ECF No. 174) is **GRANTED**.

**IT IS FURTHER ORDERED** that SMK must pay Nanal $1,136,030 on the breach of the APA claim.

**IT IS FURTHER ORDERED** that Maqbool must pay Nanal $733,625 on the breach of the guaranty claim.

**IT IS FURTHER ORDERED** that the 170 Bench Order is **AMENDED** to the following: SMK and Maqbool must pay Nanal $1,740,000 in statutory damages pursuant to SMK's and Maqbool's trademark infringement and counterfeiting claim.

**IT IS FURTHER ORDERED** that Michelman Robinson is awarded $160,922.25 in attorneys fees.

**IT IS FURTHER ORDERED** that Marquis Aurbach is awarded $246,450.15 in attorneys fees.

**DATED:** September 30, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**